# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1987

_____

Josphine Wangari Gitau,            *
                                         *
            Petitioner,           *
                                         * Petition for Review of an
       v.                          * Order of the Board of
                                         * Immigration Appeals.
Michael B. Mukasey, Attorney    *
General of the United States,     *
                                         *
           Respondent.        *

_____

Submitted: January 18, 2008
Filed: March 28, 2008

_____

Before BYE, BEAM, GRUENDER, Circuit Judges.

_____

BEAM, Circuit Judge.

Petitioner, Josphine Gitau, appeals the Board of Immigration Appeals' (BIA) March 30, 2007, order denying her motion to reopen and reconsider her removal proceedings and rescind the Immigration Judge's (IJ's) in absentia removal order. This appeal contains a great deal of "he said, she said" as to why Gitau did not appear at a February 13, 2006, removal hearing. Applying our abuse of discretion standard to the BIA's denial, we find there was none.

## I.    BACKGROUND

### A.    Notice to Appear

Gitau is a citizen of Kenya who entered the United States on or about November 28, 1998, as a nonimmigrant visitor with authorization to remain in the United States until January 15, 1999. Gitau did not depart on that date. On August 27, 2001, she married Kenneth Kurtz. Kurtz filed an I-130 Petition for Alien Relative on April 15, 2002, and Gitau then filed an I-485 adjustment of status application. However, Kurtz withdrew the I-130 application and thus the INS denied Gitau's adjustment of status application in September 2002. Immediately thereafter, the INS started removal proceedings against Gitau, serving her with a Notice to Appear as an alien who remained for a time longer than permitted. On November 4, 2002, Gitau, represented by former counsel Samuel Omwenga, appeared at a bond hearing in Kansas City, Missouri.

### B.    IJ Order of Removal In Absentia

In April 2003, Kurtz filed a second I-130 on Gitau's behalf but Kurtz died before it was adjudicated. Thereafter, Gitau appeared at two hearings (May 2003 and September 2004) at which her attorney, Omwenga, appeared telephonically. At the September 2004 hearing, Gitau's removal case was continued until February 13, 2006. Gitau and Omwenga were orally notified of the February 13, 2006, hearing date. Before February 2006, the pending I-130 petition was administratively closed due to Kurtz's death on June 8, 2004. Gitau filed an I-360 Widower Petition on August 22, 2005, which was approved on March 31, 2006.[1] However, Gitau and Omwenga both

_____

[1] In April 2006, Gitau did file a copy of the United States Citizenship Immigration Service's approval of her widower petition with the IJ as supplemental documentation in support of her then-pending motion to rescind the in absentia order of removal. However, the removal proceedings and the widower petition were wholly

failed to appear at the February 13, 2006, merits hearing on her removal proceedings and the IJ ordered Gitau removed to Kenya in absentia.

### C.      First Motion to Reopen (Before the IJ)

Through Omwenga, Gitau filed a timely motion to reopen removal proceedings with the IJ on March 31, 2006, based on a claim of exceptional circumstances. In that motion, Gitau claimed that neither she nor Omwenga received written notice of the February 13, 2006, hearing, and, further, that the INS officer told Gitau upon inquiry in December 2005 "that her case was closed." Gitau misunderstood the officer to mean her removal proceedings when, in fact, the officer likely conveyed to Gitau that the pending I-130 case was closed following her husband's death. Further, Gitau claimed in that motion that she also misunderstood a conversation she had with Omwenga in December 2005 where he said "not to worry." She claims this statement by Omwenga also led her to believe that her removal proceedings were closed and that she need not attend the February 13, 2006, hearing. On May 23, 2006, the IJ denied Gitau's motion to reopen, noting that regardless of any misunderstandings Gitau had in December 2005, both Gitau and Omwenga were orally notified of the February 13, 2006.

### D.      Appeal to BIA

Gitau retained new counsel and timely appealed the IJ's denial of her motion to reopen on June 20, 2006. There, Gitau alleged that exceptional circumstances, namely Omwenga's ineffective assistance of counsel, caused her failure to appear at the February 13, 2006, removal hearing. In the affidavit in support of this appeal, Gitau claimed that Omwenga led her to believe that she did not have to attend the last removal hearing, and, in fact, *told* her not to go to the February 13, 2006, hearing. She

---

separate and the approval of the latter had no direct effect on the former.

-3-

also included a bar complaint that she filed against Omwenga, as well as copies of bar complaints against Omwenga filed by others. Omwenga responded to these allegations by stating that he never told Gitau not to attend the hearing and that, in fact, he waited for a call from the IJ on February 13, 2006, but he was never contacted to appear telephonically.

On December 28, 2006, the BIA dismissed Gitau's appeal, again emphasizing that both Gitau and Omwenga were given oral notice of the February 2006 hearing and that written notice was also sent to Omwenga. The BIA also noted that in the appeal, Gitau inconsistently claimed that she misunderstood Omwenga to say that she did not need to appear, and that he outright told her not to appear. The BIA held that Gitau failed to establish exceptional circumstances for her failure to appeal.

### E.      Second Motion to Reopen/Reconsider (Before the BIA)

Gitau filed a second motion to reopen and motion to reconsider on January 29, 2007, offering "new evidence" comprised of an affidavit by Kathryn Weber, an attorney who listened to tapes of Gitau's immigration hearings. Weber surmised that the IJ never said Omwenga could appear telephonically at the February 2006 hearing, intimating that Omwenga was ineffective for not appearing in person. The BIA denied Gitau's motions on March 30, 2007, noting that while Weber's affidavit might show Omwenga's dereliction, there was still no evidence that Omwenga advised Gitau outright not to go to the hearing.

## II.    DISCUSSION

We review decisions denying motions to reopen or reconsider for an abuse of discretion. Habchy v. Gonzales, 471 F.3d 858, 861 (8th Cir. 2006). An agency abuses its discretion when it makes a decision without rational explanation, departs from established policies, invidiously discriminates against a particular race or group,

fails to consider all factors presented by the alien, or distorts important aspects of the claim. Id. at 861-62.

On appeal, Gitau places great emphasis on the precedential application of In re Grijalva-Barrera, 21 I. & N. Dec. 472 (BIA 1996). In Grijalva, the BIA held that a counsel's erroneous instruction not to appear at a hearing could constitute exceptional circumstances for missing a hearing. Id. at 473. The application of Grijalva in this case, however, is limited by the BIA's determination that here, Omwenga did *not* tell Gitau not to attend the hearing, as Gitau claims, but rather that Gitau just misunderstood what Omwenga was telling her. Further, in Grijalva, the petitioner's former counsel, whose employee told the petitioner not to attend the hearing, affied to that very fact, unlike the current situation before this panel. Id. at 474. We cannot find that Gitau was "blatantly misled regarding [her] need to appear at the scheduled hearing," as was the alien in Grijalva. Id.

Gitau further argues that the BIA effectively made an adverse credibility finding against her, which is true. She claims this finding is not supported by specific and cogent reasons and is not anchored in the record. Gitau may be correct about the fact that the BIA did not provide many reasons why it rejected Gitau's version of the events, but it clearly held that Gitau was inconsistent in her appeal documents as to why she missed the February hearing, which satisfactorily supports the BIA's determination. Gitau reminds us that the initial affidavit stating that Gitau misunderstood Omwenga, and not that she was directed by Omwenga not to attend the hearing, was submitted while Omwenga was still Gitau's counsel, implying that Omwenga fashioned a self-serving affidavit on Gitau's behalf. This may explain some of the inconsistencies. Nonetheless, there are inconsistencies, and we cannot say that the BIA abused its discretion. Further, as the BIA pointed out, even though Weber's affidavit might support a conclusion that Gitau's attorney had many shortcomings, it does not establish that Omwenga advised Gitau to avoid the February 2006 hearing.

Regardless of how we interpret the evidence amassed by Gitau before the BIA, there is not enough to support a reversal in the face of the abuse of discretion standard.

## III.  CONCLUSION

All in all, even if we conclude that Omwenga failed to adequately represent Gitau, we have no basis to find that the BIA abused its discretion in upholding the IJ's in abstentia order.  We therefore deny the petition.

BYE, Circuit Judge, dissenting.

I respectfully dissent.  The Board of Immigration Appeals (BIA) did not give specific and cogent reasons for crediting lawyer Samuel Omwenga's version of events and discrediting those provided by Josphine Gitau.  See Celaj v. Gonzales, 468 F.3d 1094, 1097 (8th Cir. 2006) (indicating adverse credibility determinations must be supported by specific and cogent reasons for disbelief).  As such, the BIA abused its discretion by failing to consider all factors presented by Ms. Gitau, and distorting important aspects of her claim.  See Habchy v. Gonzales, 471 F.3d 858, 861-62 (8th Cir. 2006) (setting forth the circumstances under which this court may find the BIA abused its discretion).

Between the two versions of what transpired regarding Ms. Gitau's attendance at the hearing scheduled for February 13, 2006, she is more credible than is Mr. Omwenga.  With an eventually successful widower's visa petition pending, Ms. Gitau had nothing to gain and everything to lose by failing to attend her removal hearing. On the other hand, Mr. Omwenga had been disciplined previously for advising a client not to appear at an immigration hearing, which resulted in the client being deported in absentia.  In other words, Mr. Omwenga was a biased witness because he had an incentive to avoid being disciplined again, while Ms. Gitau was not.

I begin with an examination of the inconsistencies and contradictions in Mr. Omwenga's version of events, something notably absent from the BIA's analysis. First, he gave inconsistent explanations for why Ms. Gitau failed to attend the February 13 hearing. In the motion to rescind the in absentia order that he signed and filed with the BIA on Ms. Gitau's behalf (hereinafter motion to rescind), he claimed Ms. Gitau failed to appear because she misunderstood what hearing he told her not to worry about when she called him in a panic on December 27, 2005, upon her finding out one of the pending cases had been closed.

> Respondent [Ms. Gitau] did not come to court because she mistakenly believed that her case was closed, based on the information provided by the officer she saw at the CIS window on December 27, 2005 and also because when [Ms. Gitau] called her counsel [Mr. Omwenga] and he said not to worry, she thought bought (sic) meant that she did not have to come to court.

J.A. at 234.

Conversely, in the July 26, 2006, letter Mr. Omwenga submitted to the Office of Bar Counsel in response to Ms. Gitau's disciplinary complaint, he claimed Ms. Gitau did not attend the hearing because she "seemed to be concerned that she did not want to travel to Kansas City 3 hours away from her home if she did not have to . . .." Id. at 33. The BIA never considered this inconsistency in Mr. Omwenga's story.

Second, Mr. Omwenga gave different explanations regarding the advice he gave Ms. Gitau. In the motion to rescind, he claimed of telling Ms. Gitau not to worry about a case which had been closed, and she misunderstood and believed he told her not to worry about attending the February 13 hearing. But in the July 26 letter he filed with the Office of Bar Counsel, he claimed that just five days prior to the February 13 hearing he specifically advised her to attend the hearing.

On February 8, 2006, I received a phone call from Ms. Gitau wanting to know what she was going to do with her February 13, 2006 court date now that the I-130 petition was closed. I told Ms. Gitau that *she should still go to court* because her I-360 petition remained pending and that I would ask the judge to give us another continuance on that ground. Ms. Gitau seemed to be concerned that she did not want to travel to Kansas City 3 hours away from her home if she did not have to *but I told her she had to*.

Id. (emphasis added). The BIA never considered this difference in his story.

Third, Mr. Omwenga's conduct was inconsistent with his version of events. If, in fact, just five days prior to the February 13 hearing he specifically advised Ms. Gitau to attend the hearing, it was improper for him to sign and file a motion to rescind with the BIA claiming his client did not attend the hearing because of a misunderstanding. Cf. Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper – whether by signing, filing, submitting, or later advocating it – an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support.").[2]

Fourth, Mr. Omwenga stated in the motion to rescind that neither he nor Ms. Gitau received written notice of the February 13 hearing date. "Respondent [Ms. Gitau] was not given a copy of the notice for the hearing and neither did her counsel receive a copy of the notice." J.A. at 232. The record does not support the second claim, as it indicates he received both oral and written notice of the hearing scheduled

---

[2]Indeed, Mr. Omwenga appeared more than willing to engage in dubious behavior when proceeding before the immigration courts. Ms. Gitau stated under oath that when she spoke with Mr. Omwenga about having been deported in absentia for following his advice not to attend the February 13 hearing, "[h]e asked me if I knew of any doctor who would give me a sick note for that day[.]" J.A. at 126.

for February 13, 2006. Furthermore, Ms. Gitau herself never made an issue about a lack of notice for the February 13 hearing. Rather, she acknowledged receiving oral notice of the hearing on September 9, 2004, and her conduct shows she was aware of the hearing date – her visit to the immigration officer on December 27, 2005, was for the specific purpose of preparing for the February 13 hearing because she had been told she would need to have her fingerprints taken prior to the hearing. The BIA never considered Mr. Omwenga's unusual claims regarding lack of notice when determining which version of events to credit.

Fifth, Mr. Omwenga failed to attend the February 13 hearing himself, and his explanation for this failure is suspect. In the July 26 letter he submitted to the Office of Bar Counsel, he maintained he was planning to attend the hearing by telephone. "On February 13, I was at my office waiting to get a phone call from Judge Brahos regarding Ms. Gitau. . . . However, no call came from the Judge so I contacted the EOIR office in Chicago but was only told that the judge would call but the call never came and there is no indication the judge tried to call on that day." Id. at 33. Ms. Gitau hired an immigration attorney, Kathryn Weber, to listen to the hearing tapes of all of Ms. Gitau's removal proceedings and to provide an affidavit of what she heard. Ms. Weber stated Ms. Gitau appeared at every hearing in her proceedings except for the February 13 hearing, but Mr. Omwenga had failed to appear at hearings held on December 2, 2003, and February 13, 2006. Ms. Weber also stated that, at the hearing held on September 9, 2004, when the February 13 hearing date was set, Mr. Omwenga never made a motion to appear at the February 13 hearing by telephone, and the immigration judge (IJ) never offered him the option of appearing by phone. Ms. Weber stated it was clear from the transcript the IJ expected both lawyer Omwenga and Ms. Gitau to appear in person at the February 13 hearing. Id. at 25-26.

Sixth, Mr. Omwenga's lack of competence should have been taken into consideration by the BIA when evaluating his credibility. On March 6, 2006, when he initially attempted to file the motion to rescind on Ms. Gitau's behalf, the filing was

rejected because he did not include proof as to the filing fee having been paid. In addition, the heading of the affidavit he submitted with the rejected motion indicated it was the affidavit of "Adama Sourang" rather than "Josphine Gitau." Id. at 243.

Finally, the BIA failed to consider Mr. Omwenga had *twice* before been disciplined by the Office of Bar Counsel. One of the previous complaints against him involved misadvising a client about the need to attend a removal hearing. This other client was also deported in absentia and claimed he advised him not to appear at an immigration court hearing because his case had been continued. The Office of Bar Counsel found Mr. Omwenga provided the wrong hearing date to his client and admonished him.

In contrast to the numerous reasons for discrediting Mr. Omwenga's story, there is only one inconsistency in Ms. Gitau's statements, and there is a plausible explanation for it. As noted by the Court, the initial affidavit Ms. Gitau signed while Mr. Omwenga was still representing her states she *misunderstood* Mr. Omwenga's advice, while the subsequent affidavit she signed after obtaining new counsel specifically states Mr. Omwenga "told me *not to go to the February 13th hearing* until other dates were set as my case was still pending." Id. at 125 (emphasis added). As the Court acknowledges, however, this single inconsistency is explained by the fact Mr. Omwenga himself prepared the first affidavit, and had every reason to include a self-serving statement in the affidavit.[3] Thus, Ms. Gitau should not be faulted for this single inconsistency, as she had the right to trust her lawyer to represent her interests when preparing the affidavit for her signature. See Galvez-Vergara v. Gonzales, 484

---

[3]Ms. Gitau stated under oath that when she spoke to Mr. Omwenga about having been deported in absentia for following his advice not to attend the February 13 hearing, he stated: "You people don't understand, you shouldn't say that I asked you not to go to court. It's acceptable to me if you accept having misunderstood me." Id. at 126.

F.3d 798, 802 n.4 (5th Cir. 2007) (indicating it is "reasonable for [an alien] to grant effective control of the case to his attorney").

Furthermore, although the Court refers to "inconsistencies" in Ms. Gitau's appeal documents, <u>ante</u> at 5, in fact the BIA referred to just this single inconsistency when it denied her motion to reopen. <u>See</u> Addendum at 28. Neither the Court nor the BIA identify another single inconsistency in Ms. Gitau's version of events, nor can I find another single inconsistency which would justify the BIA's decision to discredit Ms. Gitau.

In sum, without any explanation, the BIA accepted the incredible and dubious version of events set forth by Mr. Omwenga, and rejected the credible version of events set forth by Ms. Gitau without giving specific and cogent reasons for doing so. This constitutes an abuse of discretion. I would grant the petition for review and remand this matter to the BIA with instructions to reopen Ms. Gitau's removal proceedings.

_____